Viola E. Cornell *vs.* Myrtle M. Kettelle, *et al.*

JANUARY 19, 1939.

Present: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

Capotosto, J. This is a bill in equity brought by a judgment creditor to have a mortgage declared void as in violation of general laws 1923, chapter 297, section 1, which deals with conveyances in fraud of creditors. The cause was heard in the superior court on bill, answer, replication and proof. The trial justice thereafter filed a

rescript granting the prayer of the bill, and a final decree to this effect was duly entered. The cause is before us on the appeal of certain respondents from this decree.

The respondents are Myrtle M. Kettelle, Ruby V. Whitman, Lewell M. Whitman and Antha J. Whitman, all of the town of Coventry in this state. All parties in this cause are related by ties of blood or marriage. The complainant is the mother of Ruby V. Whitman, widow of Wayne H. Whitman, who died in November 1936. Wayne was the son of Lewell M. and Antha J. Whitman, and the brother of Myrtle M. Kettelle. Ruby V. Whitman did not answer the bill and a decree *pro confesso* was entered against her.

The complainant recovered a judgment against her daughter and son-in-law, Ruby and Wayne Whitman, on June 8, 1934, by submission of the defendants. It appears in evidence here that Wayne Whitman was interested in political activities in the town of Coventry and that his wife, Ruby, was a school teacher in that town. For some years before his death Wayne became involved in serious financial difficulties. For the sake of economy he left the town of Coventry and, with his wife, went to live elsewhere for some time. Apparently this change directly affected his position in town affairs, and indirectly threatened Ruby's position as teacher, because she was no longer a resident of the town. It is clear that for both of these reasons Wayne considered it necessary again to live in Coventry.

Another important part of the background of this cause is the previous conduct of the father, Lewell Whitman, towards his son, Wayne. The evidence is uncontradicted that the father had repeatedly come to his son's assistance in his financial difficulties and had paid out some thousands of dollars to Wayne's creditors. The drain upon the father's resources was such that finally all that was left was the family homestead in the village of Washing-

ton, which was owned by him and his aged wife, Antha, and where they lived. Of this couple the husband was the sole owner of the principal part of this homestead and was much the more active in business matters. We shall therefore hereinafter treat him as the sole owner of the homestead and treat acts and intentions of both of them as if they were his alone.

In a final effort to assist his son and daughter-in-law, the father conveyed the homestead to them as tenants in common, by quitclaim deed dated March 5, 1936. On that same day he took back from them a mortgage for $6000 on that property to his daughter Myrtle M. Kettelle, for the purposes and reasons that will presently appear. Both of these instruments were recorded the next day after their execution. There is some dispute as to whether a mortgage note was executed at that time or was executed later and dated back to correspond with the date of the mortgage; but this conflict in the evidence is immaterial in our view of the cause. This mortgage was transferred by Myrtle M. Kettelle to her father and mother on July 13, 1936, but the transfer was never recorded.

On May 21, 1937, the complainant brought against her daughter Ruby an action of debt on judgment based on the above-described judgment. In this action she attached only her daughter's interest in the real estate in question. Shortly thereafter foreclosure proceedings were commenced by the mortgagee under the mortgage of March 5, 1936, whereupon the complainant brought this bill.

The complainant contends that, by the deed of March 5, 1936, Lewell made an absolute gift of his homestead to Wayne and Ruby, and that the mortgage by Ruby of her interest in that property, even though made on the same day, was a conveyance in fraud of complainant's rights as a creditor, in violation of G. L. 1923, chap. 297, section 1. To support her contention that the conveyance to Wayne and Ruby was an absolute gift, the complainant

relies mainly upon her daughter Ruby, who, having allowed this bill to be taken *pro confesso* against her, testified for the complainant that in a conversation with Lewell and his wife they both "said it (the conveyance) was a gift." This is all her testimony on this point. The complainant also urges the testimony of James E. Rathbun to the effect that at various times Lewell told him that he wanted Wayne and Ruby to have the property; that he conveyed it to them so that they "would have a place to live", and that he requested the mortgage to make certain "that Wayne's creditors couldn't touch this property."

There are a number of facts and circumstances, however, that are either undisputed or clearly established by the evidence. There is no question that the complainant was not a creditor of Lewell Whitman. It is also clear that Lewell did not intend to give away the roof over his own and his wife's heads for the benefit of Wayne's creditors, of whose existence he was fully aware. The evidence clearly shows that Lewell took Wayne and his family into his own home to lighten Wayne's household expenses; that he put the legal title of his property in Wayne and Ruby to help them meet local conditions in the town of Coventry; and that, by means of the mortgage in question here, which was recorded on the the same day as the deed, he plainly intended to retain a real substantial interest in and control over this property for the protection of himself and wife, Antha, in their declining years.

Throughout Lewell's testimony we find him repeatedly saying that he told Wayne and Ruby that he would deed his property to them *provided* they gave him a mortgage on that property to protect him and his wife in their old age. The following excerpts from his testimony are illustrative. " 'Wayne, if you come back in Coventry I will let you have the deed of this place, providing that you give me a mortgage back on it. . . . I will let you have a deed if you will—if you give this mortgage to protect us, my

wife and me, to protect us in our old age.' And it was decided by my wife and I it was best for Myrtle to take the mortgage in her name. That is the fact and Ruby knows it. . . . 'Wayne, that is all I got left.' " The evidence also shows that up to the time of Wayne's death the latter always disclaimed all interest in the property and that Ruby never made any claim thereto. Furthermore, the complainant did not take any action to subject this property to the payment of her judgment until fourteen months after the deed and mortgage were recorded and not until after Wayne's death.

The complainant lays great stress on the fact that at the preliminary hearing on this bill Lewell testified that he agreed to give Wayne a deed to his home provided he received back a mortgage big enough so that Wayne's creditors would derive no advantage from the conveyance. The pertinent part of that testimony, which related to a conversation between Lewell and Wayne, was as follows: "I gave you everything I have got, I won't give you this property so your creditors will make any trouble for you and drive you out. You make the mortgage big enough." From this the complainant argues that the conveyance was in fraud of Wayne's and Ruby's creditors. We cannot accept this reasoning. Lewell was under no legal obligation to Wayne's creditors. If he was disposed to help Wayne and Ruby personally to the utmost limit of his resources, it does not follow that he was obliged to place his property at the mercy of Wayne's creditors, so that they might defeat the very purpose that he sought to accomplish and at the same time lose his own rights in that property. The testimony that we have just quoted, reasonably construed in connection with all the circumstances in evidence, strongly tends to strengthen the conclusion that, while Lewell wanted to provide a home for Wayne and his family, he clearly intended to retain control of his property for his own and his wife's protection.

There is no merit in complainant's argument that Lewell acted unfairly in taking the mortgage originally in the name of Myrtle M. Kettelle instead of in his own name. Lewell had been dangerously ill and was still confined to his bed when the transaction under consideration occurred. Throughout his illness Myrtle had paid all medical and household expenses, and was still doing so. Under these conditions, Lewell believed that it was for the best interests of all concerned, including his aged wife, that the mortgage be taken in the name of his daughter Myrtle. Shortly after he recovered from this illness, he had the mortgage transferred to him. We find nothing fraudulent in this family arrangement. In fact, it confirms our opinion that Lewell did not intend to make an absolute gift of his property to Wayne and Ruby.

In order to establish her contention, the complainant separates an entire transaction into its component elements, claiming the benefit of the deed and avoiding the disadvantage of the mortgage. This she cannot do, for the deed and the mortgage are parts of one entire transaction and should therefore be considered together in their legal effect on each other.

The basis of the complainant's contention is that there was an absolute gift of the property in question to Wayne and Ruby. Ordinarily the burden of showing a gift rests on the person or persons claiming it. *Bagley* v. *Page,* 57 R. I. 186, 191; *Colangelo* v. *Colangelo,* 46 R. I. 138. Our consideration of all the evidence presented, together with such reasonable inferences as may be drawn from the undisputed facts and testimony, causes us to find that the trial justice was clearly in error when he determined that Lewell had made an absolute gift by the conveyance of his homestead to his son and daughter-in-law.

In making an absolute gift, the donor parts with all property in and control over that which is given. This is not the situation in the instant case. The evidence is

clear that, notwithstanding the deed to Wayne and Ruby, Lewell retained substantial, if not complete, control over his homestead by means of a mortgage which fully covered and probably exceeded the value of the property. Considering the deed and the mortgage as mutually dependent parts of one transaction, as the evidence clearly shows, the effect of the transaction, taken as an entirety, is that Wayne and Ruby did not receive an absolute gift of the whole property but merely an equity of redemption under the mortgage.

In granting relief to the complainant, the trial justice relied upon the case of *Tanner* v. *Whitney*, 52 R. I. 391. That case might have been pertinent if the evidence in the instant cause established an absolute gift by Lewell to Wayne and Ruby, but, as we have already stated, such a gift is clearly not proven. In the *Tanner* case, *supra*, a a debtor conveyed to his wife, in 1929, his interest in property that he had owned since 1912, and purposely misled his creditor as to the change in ownership. Here, the complainant was not the creditor of Lewell and she was not misled by him respecting the deed and mortgage under consideration. In conveying to Wayne and Ruby this property, which at the time was not subject to any claim of the complainant, Lewell had a right to impose such condition as he deemed advisable or necessary to protect his own interests, and he did so by demanding the mortgage that the complainant now seeks to avoid in part as in fraud of her rights as a creditor of Ruby. The *Tanner* case is, therefore, inapplicable to the facts in this case.

In view of this conclusion, we find that G. L. 1923, chap. 297, section 1, does not apply in the circumstances of this cause. The complainant's bill should have been denied and dismissed by the superior court.

For the reasons stated, the appeal of the respondents is sustained and the decree appealed from is reversed.

On January 30, 1939, the parties may present to this court for approval a form of decree to be entered in the superior court in accordance with this opinion.

*Henry M. Boss,* for complainant.

*George Roche,* for respondents.